# REPORTS OF CASES ADJUDGED

IN THE

# SUPREME COURT OF PORTO RICO

APARICIO BROTHERS, PLAINTIFFS AND APPELLEES, *v*. H. C.
CHRISTIANSON & CO., DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Ponce in Proceedings for
Opening Default in an Action for Damages.

No. 1524.—Decided March 16, 1917.

APPEAL—ATTACHMENT—APPEARANCE—TRANSCRIPT OF RECORD—JUDGMENT ROLL—
ATTORNEY.—When an appeal is taken from an order overruling a motion to
set aside a judgment and cancel a bond given for dissolving an attach-
ment on property of a defendant to secure the effectiveness of a judgment,
it being alleged that an appearance in the said proceeding by an attorney
in the name of the defendant was made without the express or implied au-
thorization of the latter, the transcript of the record should contain a
copy of the judgment roll and a copy of the said proceedings in order
that the court may know how the objectionable appearance was made.

ID.—ESTOPPEL—RECORD—JUDICIAL NOTICE—DEFICIENCY.—In the absence of some-
thing in the nature of the estoppel of a person desiring to take advantage
of the silence of a record in order to allege matters which the courts know
to be otherwise, courts of appeal will not take judicial notice generally
of their own records, and they will not take judicial notice thereof solely
for the purpose of supplying a deficiency in the record.

ID.—JUDICIAL NOTICE—LAW OF CASE.—The courts will take judicial notice of
matters decided in a previous appeal in the same case in order to prevent
their being raised again by a party.

ID.—LAW OF CASE.—When the facts shown before the trial court and the theory
of the appellant are different from those in a former case, the decision in
the former case is not the law of the case in the latter, and the appellant
should submit to the appellate court the record as it was considered by
the trial court.

APPEARANCE—ATTORNEY—AGENT—RATIFICATION.—When a defendant, after be-
coming advised that his presumed agent had employed an attorney to move
to dissolve an attachment levied on his property, allows the proceedings.
to continue without taking any action, such failure to act constitutes a
ratification of the acts of the attorney.

ID.—ID.—PRESUMPTION.—The presumption that an attorney is authorized to rep-
resent a party is not lightly to be rebutted and his acts are susceptible of

1

easy ratification. It is a principle in the interest of the whole bar. This presumption lies at the foundation of our court procedure, for otherwise at every step the court would have to stop and question its attorneys as to their authority.

ID.—QUASI-CONTRACT.—The facts of this case have been considered as a quasi-contract under sections 1789, 1790, 1791, 1793 and 1794 of the Civil Code.

The facts are stated in the opinion.

*Messrs. R. Martínez Nadal* and *Oscar B. Frazer* for the appellants.

*Mr. José Tous Soto* for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

Appellant in the District Court of Ponce moved to set aside a judgment rendered against it, and to cancel a bond. The motion, among other things, recites that the appellant is a firm organized under the laws of New York, with its domicil in New York, and that it has no partner or agent in Porto Rico authorized to appear for said firm in any sense before the courts of justice in Porto Rico. That Calvin Dietrich is only a commission agent of the appellant; that said Dietrich is not a partner or in any way interested in the firm, nor did he have implied authority, nor was he expressly or tacitly given authority by the firm to appear for it in any suit as a complainant, nor to accept or receive the service of proceedings for it as a defendant, and that his powers are solely and exclusively limited to the making of sales in Porto Rico, which must be previously confirmed by the appellant; that the said defendant has never authorized Frank Antonsanti, attorney-at-law, to appear for it in this case, neither by general nor special appearance, to ask for the nullity of any proceeding in this case; that the appellant has not received any service, summons, or notice of the proceedings in this case in the District Court of Ponce; that the District Court of Ponce never acquired jurisdiction over the appellant in any way (reciting some of the reasons); that the appellant offers the complainant a guaranty which may be sufficient for the performance of any judgment that may be rendered in this case, canceling then the bond given in favor

of the complainant by Segundo Cadierno and Manuel Gómez, of San Juan; that the appellant has a good and sufficient defense against the action begun by the complainant, therefore the appellant prays the court in accordance with section 140 of the Code of Civil Procedure and in the interest of justice to grant this motion and permit the defendant, now appellant, to file its answer in the case, under a sufficient guaranty for the complainant, and cancel the bond given by Segundo Cadierno and Manuel Gómez to secure the effectiveness of the judgment which might be rendered in the case. The aforesaid motion is signed and sworn to by R. Martínez Nadal, attorney-at-law, swearing to certain paragraphs as of his own knowledge, including, somewhat strangely as it seems to us, the paragraph which sets forth the relations that exist between Calvin Dietrich and the appellant firm. Paragraph 8, whereunder the appellant denies the authority of Frank Antonsanti to appear for it, is sworn to on information and belief.

Accompanying the motion is an affidavit of William G. McNaughton. In this affidavit it is averred that McNaughton is one of the members of the firm of H. C. Christianson & Company and that he is thoroughly familiar with all the business of that firm; that the said firm has not been served with nor has it received any summons or any process in the above-entitled action; that the said firm has no officers, employees, or agents within the Island of Porto Rico, and that all merchandise sold by the said firm of H. C. Christianson & Company in the Island of Porto Rico is sold by it to commission merchants who are not agents of the said firm; that the said firm of H. C. Christianson & Company has never authorized any person in Porto Rico to appear on its behalf in any suit or suits in any court in Porto Rico, save and except that it has duly authorized the firm of Rounds, Hatch, Dillinghham & Deveboise to appear in its name and on its behalf for the purpose of moving to set aside the judgment rendered in the above-entitled action and the judgment ren-

dered in the other actions; that the said firm did not authorize Frank Antonsanti to appear in its name or on its behalf in the above-entitled action, either in the court above named or in the Supreme Court of Porto Rico, for any purpose whatever; that said firm did not authorize Francis E. Neagle to appear in its name or on its behalf in the above-entitled action in the Supreme Court of Porto Rico; that the said firm has never authorized Calvin Dietrich to appear in its name or on its behalf in any suit or suits in any court in the Island of Porto Rico or in the above-entitled action; that said firm has never authorized said Calvin Dietrich to employ or retain any attorney or attorneys in its name or on its behalf in the Island of Porto Rico, nor has said firm ever given authority to said Calvin Dietrich to authorize any attorney or attorneys to appear on its behalf or in its name in any suit or suits in any court in Porto Rico, including the present action; that any appearance in the name or on behalf of the said firm of H. C. Christianson & Company in any suit or suits in any court in the Island of Porto Rico or in the above-entitled action by said Calvin Dietrich or by said Frank Antonsanti, or by any other person whatever, was wholly without the knowledge or consent of said firm and was wholly unauthorized and illegal, and that no such appearance has ever been ratified by the said firm.   There follows an affidavit by Calvin Dietrich in the same general tenor and, furthermore, setting out some things done by Frank Antonsanti, the course of dealing of H. C. Christianson & Company and other matters which, with the affidavit in general, we shall discuss hereafter.   A letter is attached as an exhibit to the affidavit of Dietrich as follows:

"Nov. 26th, 1915.

"MR. FRANK ANTONSANTI,
     Royal Bank Building,
          San Juan, P. R.
"Dear Sir:
     Yours of the 19th inst. to hand, but in reply we would say we have nothing to do with this matter whatsoever.   We did not authorize

any attorney for our account in Porto Rico, and if Mr. Dietrich has made any such arrangements with you, it was for his own account, not for ours. Therefore, we must decline to entertain any claim for services, same not having been authorized by us. If you have made any contract with Mr. Dietrich, he is the one to whom you have to look for your fees.

Your very truly,

(Signed) H. C. CHRISTIANSON & Co.''

In addition to the motion, the two affidavits and the letter hereinabove set forth, the transcript also contains a writing in opposition to the motion—an affidavit of Frank Antonsanti accompanying the said motion—a previous motion of the appellant, as represented by Attorney Frank Antonsanti to set aside the judgment; the affidavit supporting the said motion; the orders of the court below on both motions; the judgment of this court affirming the first order refusing to set aside the judgment; the notice of appeal in the case, and the certificate of the attorneys to the transcript. The affidavit of Frank Antonsanti is as follows:

''I, Frank Antonsanti, state the following under oath: That I was retained by Calvin Dietrich, of San Juan, to appear in this case and secure the dissolution of the attachment levied on certain sugar belonging to H. C. Christianson, of New York, by giving a surety bond; that upon engaging my services in favor of H. C. Christianson, Calvin Dietrich informed me that he was the agent of the said firm in Porto Rico and that he was authorized to retain me as attorney in this case for the purpose of taking action to dissolve the said attachment; that this court ordered the dissolution of the attachment on motion of the undersigned in the name of H. C. Christianson; that by virtue of the action taken by the undersigned attorney and of the bond given, the attached sugar was released and left at the disposal of the defendant firm, H. C. Christianson & Company, to whom it was ordered to be delivered, and was received by Calvin Dietrich as the agent of H. C. Christianson and sold by him for the account of Christianson, according to the best information and belief of the affiant; that the firm of H. C. Christianson & Company was notified by Calvin Dietrich that the bond had been given and of all the proceedings in this case, as well as of the fact that an appeal was pending before the Supreme Court from the judgment rendered against the said firm, and that Calvin Dietrich had retained and

employed the undersigned as attorney to secure the dissolution of the attachment and the reversal of the judgment, these facts being known to the affiant because Calvin Dietrich showed him the correspondence between Dietrich and H. C. Christianson & Company; that in this correspondence H. C. Christianson & Company stated to Calvin Dietrich that the questions pending in the suits against the said firm as defendant and Arbona Hermanos and Aparicio Hermanos, Nos. 4112 and 4113, in the District Court of Ponce, and Negrón & Hernández, No. 4498, in the Municipal Court of Ponce, were matters under the exclusive control of said Calvin Dietrich, and that he was responsible for the result and consequences of such suits and for the payment of all the expenses thereof; that the letter of November 26, 1915, of which the defendant exhibits a copy, is a reply to a letter of the affiant to the said firm, a copy of which is transcribed in and made a part of this affidavit; that until that time—that is, until November, 1915, when the undersigned demanded payment of the firm for his professional services—neither the firm of H. C Christianson nor any of its members had ever repudiated or disavowed the actions taken by the undersigned, but, on the contrary, had approved of such actions and although knowing of them had abstained absolutely from disapproving of them; that this affidavit was made at the request of Attorney José Tous Soto and for the purpose of clearing my good name and professional reputation, which were attacked by H. C. Christianson & Company and their agent, Calvin Dietrich, professional secrecy being respected notwithstanding.

"San Juan, P. R., March 13, 1916.

(Signed) "Frank Antonsanti, Attorney."

The appellee made a motion in this court asking for the dismissal of the appeal.

The appeal must be dismissed for lack of a sufficient record. The transcript does not contain a copy of the judgment sought to be set aside, nor any other part of the judgment roll, nor anything to give color to the right of the court below to render judgment, which right was confirmed by this court in the alleged previous appeal. The present motion to set aside the judgment makes references to a bond given in the district court to secure the effectiveness of the judgment for which appellant in its last motion offered to substitute another. From the motion and affidavits, and partic-

ularly from the affidavit of Frank Antonsanti, it appears that the bond alluded to was given to release goods belonging to the appellant attached in the original suit. In its motion to set aside the judgment the appellant maintained that any appearance made by any attorney for it, generally or specially, in any incidental motion or proceeding, was without authority, yet none of these incidental proceedings by which the goods were released is made a part of the transcript on appeal, the theory of the appellant being that no one had authority to appear for it in any proceeding in the suit or incidental to it. It was important to know from the said proceeding whether the acts of attorneys in obtaining the release of the goods were in point of fact ratified by the appellant, and for this purpose the manner of the release, and to whom, was important. If goods were released, the property of appellant, the natural inference was that they were returned to appellant and that appellant was apprised that its goods were returned to it through or by the action of certain court proceedings through certain attorneys. On whatever theory an appearance was made in the court below, the whole proceedings would have to be before us so as to exclude any reasonable theory on which the court below refused to set aside its judgment. The appellant apparently concedes that the record is incomplete, for it suggests and moves that this court take judicial notice of the facts before it on the previous appeal in this case.

Now, while it may be true that appellate courts may and do take judicial notice of their records in the same case and between the same parties for certain purposes, yet we are convinced that from the authorities the cases are unusual and extraordinary and the records are generally resorted to to prevent a party from taking advantage of some matter in the proceedings which the court necessarily knows to be otherwise. In this proceeding, for example, the appellee attempting to raise again the question that the court below might have acquired jurisdiction by service on Dietrich or by pub-

lication, this court will take judicial notice that these points were decided against the appellee in the previous appeal.

We do not think that courts will permit a large part of the proceedings in a case to be brought into the record by suggestion from a previous appeal between the parties to serve an affirmative purpose of an appellant. It would be a vicious practice to permit parties to bring up a fraction of the record and then suggest that the rest should be supplied by the records of this court. We have not found in the citations of appellant anything which would indicate a different theory, save perhaps in the case of *Gardner* v. *Continental Ins. Co.,* 25 Ky. Law, 426, 75 S. W. 283. The court there held that when the appellant presents the record of a previous case as part of the record on appeal, the appellee who made no motion to strike is estopped, we may say, from showing the facts to be different from what the courts and the parties knew them to be in the previous appeal. The intimation from the decision is that the court would have stricken out the record on motion. In *McNish* v. *State,* 36 So. 176, the court went to the records to prevent an appellant from urging that the trial on the then appeal was not a second jeopardy, but the second trial on the remanding of the case. Other decisions cited show that the court took notice of the law of the previous case, as we have done. The effect of some of the decisions is that the appellate court will not allow parties to rely on a state of facts which could not have been successfully contended for in the court below. The courts will also interpret the effect of former decisions on pending appeals. Appellant also suggests that the previous appeal, 23 P. R. R. 457, is the law of the case. So far as the appellees are insisting or raising questions that were disposed of on the previous appeal, we agree with the appellant; but if that case were the law of this case, we should be compelled to affirm the order appealed from without further ado. It is because the facts presented to the district court and the theory of the appellant are now different from the former case that

it is not the law of the case for the appellant; and for a similar reason the record as made in the court below should have been presented to us in this case.

As the authority of the attorneys is questioned, it might very well be that the manner of the appearance of the attorneys in the District Court of Ponce, which was not shown in the previous appeal, should have been brought into the record before we could be satisfied that this motion ought not to be dismissed; we ought to have had a certificate from the District Court of Ponce that there was nothing in the record before it that could have been useful to us on appeal. In reality the appeal presented here is like a new case. The appellant is attacking the judgment on an entirely different ground. The questions presented are different and call for different or additional facts.

Although we were not requested to do so, we might certify up all the proceedings in this case in the inferior court, but we shall not exercise our discretion in this regard because we are not satisfied from the record before us as made by the affidavits, or by virtue of any of the offers made of the facts shown in the other appeal or suggested by appellant in its brief and otherwise, or of any fact in the possession of the court below, as suggested by the appellant, that a completed record could result in anything but an affirmance of the order from which this appeal is taken. From all these sources we might gather the following facts,—an important part of them suggested rather than brought into the record by appellant:

Calvin Dietrich requested Frank Antonsanti, attorney-at-law, to appear in the District Court of Ponce to release some goods of H. C. Christianson & Company which had been attached by the complainants, Aparicio Brothers, to secure the effectiveness of a judgment that might be rendered. The court accepted the bond signed by the two sureties, namely, Segundo Cadierno and Manuel Gómez, but not, it is alleged, by H. C. Christianson & Company, and the goods were re

leased. In his affidavit in this case Frank Antonsanti swore that the goods were delivered to Calvin Dietrich and by him sold for the account of H. C. Christianson & Company. What these goods were and how they came into Porto Rico is not satisfactorily explained to us. The affidavit of McNaughton says that Dietrich is only a commission agent to whom goods are sent for delivery after a contract is signed, and in the affidavit of Dietrich he swears that he receives no salary from H. C. Christianson & Company and is remunerated for his work wholly by a commission upon sugar actually shipped by said defendant to Porto Rico upon orders which it has confirmed and accepted. But here Dietrich comes into possession of goods which do not appear to belong to any consignee, but to the appellant itself. They were received by Dietrich on release from attachment and sold by him for account of H. C. Christianson & Company. This would indicate that the powers of Dietrich were wider than the affidavit of McNaughton would indicate.

It was the appearance of Antonsanti to release the goods that gave the District Court of Ponce jurisdiction to render judgment against the appellant.

If the affidavit of McNaughton be examined, it will be noticed that, taken literally, it says that although he knows of all of the business of the firm he had no knowledge of the appearance of Frank Antonsanti. If this statement were to be taken literally, the court below had the right, and perhaps it exercised it, to disregard the affidavit altogether. Such a statement is contradicted by the affidavits of Dietrich and Antonsanti and especially by the correspondence in the case. To give the affidavit any weight at all it must be limited to mean that he had no contemporaneous knowledge of the appearance of Antonsanti, and not that he did not know about any of the things done in the name of H. C. Christianson & Company as of a date a little later than the said unauthorized appearance. About two years before the signing of the affidavit by McNaughton, property of H. C. Christianson &

Company in Porto Rico was seized in attachment proceedings, released, sold and the proceeds presumably transmitted to H. C. Christianson & Company. When this firm was asked by Frank Antonsanti for his fees it replied that he must look to Dietrich, but it is not adequately denied that it knew of the steps taken by Dietrich to recover possession of its goods under process of attachment. The complaint is dated September, 1914; the attachment took place at the same time; the goods were released in the Autumn of 1914. The first motion to set aside the judgment was overruled in May, 1915, and the correspondence with Antonsanti is in November of that year. Appellant is in the position of having received the benefits through the act of Antonsanti, to have known of the acts taken in its behalf and never opportunely protested or offered to restore the *status quo* until the day of the motion to set aside the judgment. The District Court of Ponce had a right to assume from the papers before it that the firm of H. C. Christianson & Company, even though it had no knowledge of the original appearance of Antonsanti, did know a little while afterwards that Dietrich employed Antonsanti to release the goods belonging to appellant, and that nevertheless it never disaffirmed this act but, on the contrary, permitted an appeal to proceed. This knowledge and the failure on the part of the defendant to act were a ratification of the acts of Antonsanti.

Antonsanti made his appearance in this case. The presumption of authority is not lightly to be rebutted. It may be that the appellant never consciously consented to or waived anything, but with its goods released and with the affidavit of Antonsanti to the effect that it had knowledge of the proceeding, the court below was justified in believing that the presumption of authority had not been rebutted. The burden was on the appellant to satisfy the court below that the whole proceeding was without its knowledge at any important juncture. The court below had a right to infer from its order releasing the goods belonging to H. C. Christianson &

Company that they reached the proper hands or that they were placed in the hands of Dietrich and sold for the benefit of H. C. Christianson & Company with the knowledge of that firm. Not only is this so, but Antonsanti retired from the former case just as the appeal was to be argued in this court. At that time Mr. Neagle, of Rounds, Hatch, Dillingham & Deveboise, and Frank Antonsanti mutually represented Dietrich. At or about this juncture Antonsanti received a letter from H. C. Christianson & Company stating that he must look to Dietrich for his fees, and notwithstanding this Neagle argued the case in this court. It is possible, of course, that Neagle had no knowledge of the correspondence between Antonsanti and H. C. Christianson & Company, but there is no affidavit from Neagle in this case, and we think the District Court of Ponce had a right to assume that Neagle was proceeding with authority. By reason of the conduct of Dietrich at some previous stage, H. C. Christianson & Company may have felt that he and not it should be accountable for the fees in a proceeding that had been fastened on to it by some act of Dietrich, but they made no objection to the proceedings being prosecuted in their name. Antonsanti swears on information and belief that appellant was informed by Calvin Dietrich of the giving of the bond and of all the proceedings in the case, as well as of the appeal to this court; and, further, that H. C. Christianson & Co. was insisting that the cases pending in the District Court of Ponce, including this case, were within the exclusive province of Calvin Dietrich. While McNaughton and Dietrich swear that H. C. Christianson & Company gave authority to no one to represent the firm, yet the court below was entitled to believe that even if there were no direct authority, the appellant had lent itself to the proceeding and was willing to let Dietrich proceed to save what he could in his own interests and using its name. For over a year the appeal was pending and there was no disclaimer of the authority of Antonsanti first and Neagle afterwards to represent appellant.

It takes a clear case to overcome the authority of the attorneys to represent their alleged client. This presumption lies at the foundation of our court procedure, for otherwise at every step the court would have to stop and question its attorneys. Not only is there the indication in the record that H. C. Christianson & Company acquiesced in the conduct of the attorneys who purported to represent it, but later it gave the firm of Rounds, Hatch, Dillingham & Deveboise authority to represent it in the proceeding to set aside the judgment, the same firm who through Neagle had represented it at the instance of Dietrich. There is a unanimity of action or direction in the employment of attorneys that presupposes a sing'e control, if not in H. C. Christianson & Company, then in Dietrich whose attorneys said firm now employs. We have said that the presumption of authority in an attorney is not lightly to be rebutted, and his actions are susceptible of easy ratification. It is a principle in the interest not alone of Antousanti but of Neagle, of Rounds, Hatch, Dillingham & Debevoise and of the whole bar. The affidavit of H. C. Christianson & Company averred that no one had the right to represent it except Rounds, Hatch, Dillingham & Debevoise, and the appellee in the court below promptly questioned the right of the local attorney, Mr. Martínez Nadal, not a member of the firm of Rounds, Hatch, Dillingham & Debevoise, to represent the appellant. Not only did this happen but Rounds, Hatch, Dillingham & Debevoise apparently exceeded their authority in offering to give bond to abide by the judgment. The affidavit of McNaughton says that this firm of lawyers only had authority to move to set aside the judgment. The offer to give a new bond, then, might be illusory. We might question the very appeal taken in this case. The authority of Rounds, Hatch, Dillingham & Debevoise, as shown by the affidavit of McNaughton, is technically limited to move in the court below. These are some of the inconveniences that might flow if we did not insist upon a rather rigid rule of interpretation when the authority of an attorney is ques-

tioned. The right of action against attorneys who unduly appeared in court was originally the sole remedy of a client. The more modern practice has given clients the right to appear by motion, as was done in this case, but in such a motion practically every doubt of authority of attorney must be negatived; otherwise clients have only their recourse to the attorney or agent who made the unauthorized appearance.

We have treated this case principally from the aspect of the common law. Sections 1789, 1790, 1791, 1793, and 1794 of the Civil Code provide:

"Sec. 1789.—A person who voluntarily takes charge of the agency or administration of the business of another, without authorization, is obliged to continue managing the same until the end of the business and its incidents, or to notify the interested person in order that the latter may come to substitute him in his management, should he be in a condition to do so for himself.

"Sec. 1790.—An officious manager must fulfil his charge with all the diligence of a good father of a family and indemnify for injuries which, through his fault or negligence, may be caused to the owner of the property or business he may be managing.

"Nevertheless, the courts may reduce the amount of the indemnity, according to the circumstances of the case.

"Sec. 1791.—If the manager should delegate all or some of the duties of his charge to another person, he shall answer for the acts of the delegate, without prejudice to the direct obligation of the latter to the owner of the business.

"The liability of the managers, should there be two or more, shall be joint.

"Sec. 1793.—The ratification of the management by the owner of the business produces the effects of an express authorization.

"Sec. 1794.—The owner of property or a business who avails himself of the advantages of the administration of another, even when he has not expressly ratified it, shall be liable for the obligations contracted for his benefit, and he shall indemnify the administrator for the necessary and useful expenses which he may have incurred and for the losses he may have suffered in the discharge of his duties.

"The same obligation shall pertain to said owner when the object of said administration should have been to avoid any imminent or manifest damage, even when no profit results therefrom."

Likewise articles 253 and 255 of the Commercial Code provide:

"Art. 253.—After a contract has been made by the agent with all the legal formalities, the principal must accept all the consequences of the commission, reserving the right of action against the agent by reason of error or omission committed in its fulfilment.

"Art. 255.—In so far as matters not expressly foreseen and provided for by the principal are concerned, the agent shall consult him, provided this is permitted by the nature of the business.

"But should the agent be authorized to proceed according to his judgment, or the consultation be not possible, he shall proceed with prudence and in accordance with commercial customs, acting in the business as if it were his own. Should an unforeseen accident make the execution of the instructions received hazardous or prejudicial, in the judgment of the agent, he may suspend the fulfilment of the commission, communicating the reasons for his action to the principal by the speediest means of communication."

These articles cover pretty well the law of this case.

If we might read between the lines, we should say that the whole loss would eventually fall on the agent, Dietrich, who acted in this case just as if he were the firm of H. C. Christianson & Company and apparently with some show of justification by virtue of the Civil and Commercial Codes. When an agent without authority acts as Dietrich did here his acts are very easily subject to ratification; and such ratification took place whatever the interior relation between Dietrich and H. C. Christianson & Company was. To our minds it is evident that Dietrich could have obtained before the very authority that was finally given to him, or rather to his attorneys, Rounds, Hatch, Dillingham & Debevoise, to defend H. C. Christianson & Company. Dietrich and his attorneys, instead of getting appellant to come in and defend the suit of the appellee on its merits, sought to avail themselves, or their principal, of any technical defenses that might exist, and principally that of the lack of personal service on the appellant who was transacting business with various firms in Porto Rico. Now the appellant is offering to do what

should have been done after the goods were attached, namely, asking for an opportunity to plead. We are confirmed somewhat in this idea that these proceedings from beginning to end were under the control of Dietrich by the fact that the bond given, if it was unauthorized, could not affect appellant, who never signed the same, but only the sureties to whom Dietrich was of course responsible.

We have discussed this case somewhat elaborately to show that the appellant has presented no reason for the exercise of our discretion to permit the amendment of the record.

At the hearing appellant made a motion to be permitted to file an additional assignment of error, which we shall grant. The appeal must be

*Dismissed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.